IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00206-PAB-KLM

EDWARD DAVIS THORP,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

## ORDER

This matter comes before the court on defendant's motion for summary judgment [Docket No. 30]. Mr. Edward Thorp filed this case against the United States to set aside a declaration of forfeiture issued in 2006 by the Drug Enforcement Agency ("DEA") concerning his Dodge van and cash found within it on the grounds that the government did not take reasonable steps to notify him before forfeiting the property. Am. Compl. [Docket No. 21].

**I. BACKGROUND**

On January 27, 2006, plaintiff was driving east on Interstate 70 in Mesa County, Colorado in a white Dodge van. Defendant's Mot. for Summary Judgment [Docket No. 30] at 2, ¶ 1; Plaintiff's Resp. [Docket No. 31] at 2, ¶ 1. Deputy Michael Miller from the Mesa County Sheriff's Department, who was also a member of the DEA's Western Colorado Drug Task Force, stopped the van. Docket No. 30 at 2, ¶ 2; Docket No. 31 at 2, ¶ 2. Deputy Miller states that he stopped the van because he observed it weaving

onto the shoulder of the road. Docket No. 30-1 at 1. He also states that he could smell marijuana in the van and saw a glass pipe on the floor as he spoke with plaintiff at the window of the van. *Id*. He then searched the van and found $7,950 in cash, twelve bags of marijuana, and assorted drug paraphernalia. Docket No. 30 at 3, ¶ 3; Docket No. 31 at 2, ¶ 3. Deputy Miller arrested plaintiff for drug possession with intent to distribute and booked him into the Mesa County Detention Center. *Id*.

At the time of his arrest, plaintiff had a Wisconsin driver's license that listed his address as 730 Windsor Court, Wauwatosa, Wisconsin. Docket No. 30 at 3, ¶¶ 4-5; Docket No. 31 at 2, ¶¶ 4-5. Plaintiff owned a Toyota Tundra registered to the same address. *Id*. The van had California license plates and was registered to Aaron Robert McGregor and Molly R. Stebbing. Docket No. 30 at 3, ¶ 7; Docket No. 31 at 2, ¶ 7. Plaintiff showed Deputy Miller a California Vehicle Transfer and Reassignment Form indicating that he had purchased the van on December 6, 2005 for $35,000. *Id*. To verify ownership of the van, Deputy Miller telephoned Mr. McGregor on January 31, 2006 and received verbal confirmation that Mr. McGregor had received payment for the van and transferred title to plaintiff. Docket No. 31 at 5, ¶ 5; Reply to Plaintiff's Resp. [Docket No. 32] at 2, ¶ 5. Plaintiff did not change his driver's license or the registration of the Tundra until November of 2007, when he transferred both to California. Docket No. 30 at 3, ¶ 6; Docket No. 31 at 2, ¶ 6.

After being released on bond at the beginning of February, 2006, plaintiff flew to California.[1] Docket No. 30 at 4, ¶ 8; Docket No. 31 at 2-3, ¶ 8. The day after his

---

[1] The address on plaintiff's recognizance bond was the same Wisconsin address that appeared on his driver's license. Docket No. 30-2, Thorp Depo. at 13, ll.7-25.

release, he was charged with possession of marijuana, possession with intent to distribute, and possession of drug paraphernalia in Mesa County District Court.  Docket No. 30-5 at 4, ¶ 9; Docket No. 31 at 3, ¶ 9.

On February 16, 2006, the DEA sent written notice of its intent to forfeit the van and the currency by certified mail, return receipt requested, to three separate locations: the Wisconsin address listed on plaintiff's driver's license, the Mesa County Detention Center, and the individuals from whom plaintiff had purchased the van.  Docket No. 30 at 4-5, ¶¶ 10-12; Docket No. 31 at 3, ¶¶ 10-12.  The notice sent to Wisconsin was returned unclaimed and the letter sent to Mesa County was returned with a note on the envelope indicating that plaintiff was no longer in detention at that facility.  *Id.*  The letter sent to the former owners of the van, however, was delivered.  *Id.*  On February 23, 2006, the DEA again sent notices to the Wisconsin address and the Mesa County Detention Center, and again these letters were returned unclaimed.  Docket No. 30 at 5, ¶¶ 13-15; Docket No. 31 at 3-4, ¶¶ 13-15.  On March 6, 13, and 20, 2006, the DEA published notice of the impending forfeiture in The Wall Street Journal.  Docket No. 30 at 5-6, ¶ 16; Docket No. 31 at 4, ¶ 16.  The notices indicated that the deadline to file a claim was March 23, 2006 for the currency and March 30, 2006 for the van, or April 20, 2006 for either if notice was not received.  Docket No. 30 at 6, ¶¶ 17-18; Docket No. 31 at 4, ¶¶ 17-18.

On March 13, 2006, attorney James C. Wollrab entered an appearance on behalf of the plaintiff in the Mesa County drug possession case.  Docket No. 30-6.  The first week of May, 2006, not having received any claims regarding the van or the currency, the DEA forfeited both items.  Docket No. 30 at 6-7, ¶¶ 19-20; Docket No. 31

at 4, ¶¶ 19-20. On May 21, 2006, the DEA sent notice of the completed forfeiture to Mr. Wollrab. Docket No. 30 at 7, ¶ 21; Docket No. 31 at 4, ¶ 21. Plaintiff did not actually receive notice until that point and did not know before then that he had a right to contest the forfeiture or that there was a deadline for doing so. Docket No. 31 at 4, ¶¶ 1-2; Docket No. 32 at 2, ¶¶ 1-2. Rather, he "assumed that his van would be held pending the outcome of his criminal case." Docket No. 31 at 3, ¶ 8. In the fall of 2006, the court granted plaintiff's motion to suppress evidence of the stop and dismissed his case. Docket No. 21 at 2, ¶¶ 8-9; Docket No. 24 at 2, ¶¶ 8-9.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50, (1986); *Concrete Works of Colo., Inc. v. City & Cnty. of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non moving party. *Id.; see McBeth v. Himes,*

598 F.3d 708, 715 (10th Cir. 2010).

## III. DISCUSSION

### A. Regulatory Framework Governing Civil Forfeiture

Money and assets traceable to drug trafficking are subject to federal government forfeiture by means of a civil action.  18 U.S.C. § 981 (2012).  The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") provides the applicable procedures for forfeiture actions commenced after August 23, 2000.  18 U.S.C. § 983.  Property worth less than $500,000 may be forfeited through an administrative action without judicial involvement.  19 U.S.C. § 1607; 21 C.F.R. §§ 1316.75(a), 1316.77(a) (2011).  To commence a civil forfeiture proceeding, the government must send written notice of the seizure and an explanation of how to file a claim for the seized property to each interested party.  18 U.S.C. § 983(a)(1)(A)(i).  Notice must be sent "in a manner to achieve proper notice as soon as practicable."  *Id*.

To challenge a civil forfeiture on its merits, an interested party must file a claim by or before the deadline specified in the notice.  18 U.S.C. § 983(a)(2)(B).  If notice is not received, a party may file a claim no later than 30 days after the date of the final publication of notice.  *Id*.  If no claim is timely filed, the government may issue a declaration of forfeiture, which has the "same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States."  19 U.S.C. 1609(b); 21 C.F.R. § 1316.77(a).

An interested party who does not timely file a claim has only one remedy under CAFRA, namely, moving to set aside the declaration of forfeiture.  18 U.S.C.

§ 983(e)(5). Such a motion will only be granted if: (1) the government knew or should have known of the moving party's interest and did not take reasonable steps to provide notice; and (2) the moving party did not know or have reason to know of the seizure in time to file a claim. 18 U.S.C. § 983(e)(1). The motion to set aside must be filed within five years of the final publication of the notice; so long as the above conditions are met, the court shall set aside the forfeiture "notwithstanding the expiration of any applicable statute of limitations." 18 U.S.C. § 983(e)(2)(A). On a motion to set aside, the federal court lacks jurisdiction over the merits of the forfeiture and is limited to considering whether the agency followed the appropriate procedures. *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005); *see also United States v. Tinajero-Porras*, 378 F. App'x 850 (10th Cir. 2010).

      CAFRA's requirements should be interpreted in light of the Fifth and Fourteenth Amendment guarantees of due process. *United States v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003). The Constitution does not require actual notice, but rather "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The constitutionality of a particular procedure is assessed *ex ante*. *Jones v. Flowers*, 547 U.S. 220, 231 (2006). When notice sent by certified mail is returned unclaimed, the government must take "additional reasonable steps to attempt to provide notice to the property owner." *Id*. at 225. The general rule is that "the government, in endeavoring to identify and locate potential claimants, must exercise a degree of diligence

commensurate with the particular circumstances–but it need not undertake endless or impractical investigations in the hope of finding a needle in a haystack." *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 23-24 (1st Cir. 2006).

### B.  Steps the DEA Took to Provide Notice to Plaintiff

In order to defeat defendant's motion for summary judgment, plaintiff must show that a reasonable jury could conclude that the DEA did not make a reasonable effort to notify him prior to the forfeiture and that he did not have reason to know of the seizure in time to file a claim.  *See* 18 U.S.C. 983(e)(1).  Since plaintiff does not meet his burden under the first prong of this inquiry, this Court need not address the second.

In interpreting the meaning of "reasonable" under CAFRA, 18 U.S.C. § 983(e)(1)(A), this Court must be guided by jurisprudence delineating the constitutional requirements for adequate notice.  *See VanHorn v. D.E.A.*, 677 F. Supp. 2d 1299, 1309-10 (M.D. Fla. 2009).  In *Jones v. Flowers*, the Supreme Court held that the government must take "additional reasonable steps" to notify a property owner when notice of an impending tax sale sent by certified mail is returned unclaimed, so long as it is practicable to do so.  547 U.S. at 234.  The Arkansas Commissioner of State Lands had sent notice via certified mail of an upcoming tax sale of real property, which notice was subsequently returned unclaimed.  *Id*. at 223-24.  Several weeks before the sale, the Commissioner published notice in a local newspaper.  *Id*.  After a purchase offer was submitted by a prospective buyer, the Commissioner once again attempted to send notice by certified mail but it was again returned unclaimed.  *Id*. at 224.  The state proceeded to sell the house, and the former owner, upon receiving an unlawful detainer

notice, sued, alleging a violation of his right to due process.  *Id*.

The Court reasoned that a person who actually desired to inform an owner of an upcoming sale would not remain passive when a certified letter was returned unclaimed.  *Id*. at 229.  It likened the Commissioner's behavior to "watch[ing] as the departing postman accidentally dropped the letters down a storm drain," in which case a failure to follow up would be "unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman."  *Id*. at 229.  It also held that notice by publication was not adequate because "it was possible and practicable to give [plaintiff] more adequate warning."  *Id*. at 237.  The Court rejected the argument that notice was sufficient because it was sent to an address that the plaintiff, under Arkansas law, was obliged to keep up to date, holding that the plaintiff's failure to fulfill this statutory obligation did not "forfeit[] his right to constitutionally sufficient notice."  *Id*. at 231-32.

While the Court declined to "'prescribe the form of service that the [government] should adopt,'" it did provide examples of further steps that could have been taken.  *Id*. at 234 (*quoting Greene v. Lindsey*, 456 U.S. 444, 455, n.9 (1982)).  For example, the State could have sent notice via regular mail, addressed a letter to "occupant," or posted a notice on the door of the house.  *Id*.  It specifically stated, however, that the government was not required to go so far as "search[ing] . . . in the Little Rock phonebook and other government records such as income tax rolls" for plaintiff's new address.  *Id*. at 235-36.

At first glance, the matter at hand has much in common with *Flowers*.  Like the

certified letters sent to inform the property owner of the tax sale, the two sets of certified letters sent to both the Wauwatosa address and the Mesa County Detention Center were returned unclaimed. See 547 U.S. at 223-24; Docket No. 30 at 4-5, ¶¶ 10-12; Docket No. 31 at 3, ¶¶ 10-12. Unlike in Flowers, however, the DEA did take an additional step, which was to send notice via certified mail to the former owners of plaintiff's van. Id. Although the DEA had received information indicating that the transaction had been completed several months prior, it was not unreasonable to believe that the former owners would be in touch with plaintiff or have a means of contacting him, especially regarding the van. Docket No. 30 at 3, ¶ 7; Docket No. 31 at 2, ¶ 7. As the notice sent to the former owners was not returned unclaimed, the DEA had no reason to believe that notice had not been effected. Docket No. 30 at 4-5, ¶ 12; Docket No. 31 at 3, ¶ 12. The DEA sent out five separate notices before resorting to notice by publication. Taken together, these attempts satisfied the DEA's duty to take steps reasonably calculated to notify plaintiff.

It is true that plaintiff's failure to update his driver's license and vehicle registration did not forfeit his right to notice as a constitutional matter. See Flowers, 547 U.S. at 232. However, as a practical matter, it posed an impediment to locating him, diminishing the range of practicable options available to the DEA. Moreover, plaintiff does not allege facts tending to show that after his release on bond in early February, he was unable to either update his license and registration or to contact the DEA–on his own or through his attorney–to inquire about the van that he knew had been seized. When asked at his deposition where he was living at the time the property was forfeited, plaintiff said: "I was actually in between places, so there was no

real place I was living." Docket No. 30-2, Thorp Depo. at 10, ll. 21-22. However, he did not inform the police or the court of that circumstance, as indicated by the fact that the Wisconsin address is listed on his personal recognizance bond. *Id.* at 13.

Nor does plaintiff make a direct allegation that there were additional practicable steps that the DEA should have taken. Instead, he implies that the DEA was aware of his attorney's identity prior to forfeiture,[2] but provides no factual basis to buttress that assertion. It would thus be unreasonable to infer that the DEA knew the name and identity of plaintiff's attorney before the middle of May. Even if taken as true, this assertion does not change the fact that the steps the DEA took to notify plaintiff were reasonable and left no reason to believe he had not received notice.

## IV. CONCLUSION

In addition to attempting twice to contact plaintiff at his address of record and at the detention center, the DEA sent notice to the former owners of plaintiff's van and published notice in the Wall Street Journal. Docket No. 30 at 4-6, ¶¶ 10-12, 16; Docket No. 31 at 3-4, ¶¶ 10-12, 16. Plaintiff has failed to raise a genuine dispute as to any material issue of fact. On the undisputed facts before the Court, no reasonable jury could conclude that the DEA "failed to take reasonable steps to provide [plaintiff] with notice." *See* 18 U.S.C. § 983(e)(1)(A).

For the foregoing reasons, it is

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 30] is

---

[2] "The government knew that a criminal case was pending. . . . Instead of sending a notice to Mr. Wollrab before the assets were forfeited, the DEA sent Mr. Wollrab notice some two weeks after the forfeiture had occurred." Docket No. 31 at 10.

**GRANTED**. It is further

**ORDERED** that the Trial Preparation Conference scheduled for November 16, 2012 and the trial set for December 10, 2012 are hereby **VACATED.** It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is **DISMISSED.**

DATED November 16, 2012.

                                                BY THE COURT:

                                                s/Philip A. Brimmer
                                                PHILIP A. BRIMMER
                                                United States District Judge